UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VAUGHNA D. NAY,<br><br>    Petitioner,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>    Respondent. | Case No. 4:10-cv-00099-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court for its consideration is Petitioner Vaughna D. Nay's Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits filed on February 21, 2010. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will remand to the Commissioner with instructions.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on August 12, 2004, alleging disability due to knee pain, gastrointestinal

**MEMORANDUM DECISION AND ORDER - 1**

pain, heart problems, and bipolar or schizoaffective disorder. This application was denied initially and on reconsideration, and a hearing was held on August 6, 2007, before Administrative Law Judge ("ALJ") Michael Kennett. After hearing testimony from Petitioner and vocational expert Kenneth Lister, ALJ Kennett issued a decision finding Petitioner not disabled on November 1, 2007. Petitioner timely requested review by the Appeals Council, which denied her request for review on January 25, 2010.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was forty-four years of age. Petitioner completed high school, and her prior work experience includes work as a cashier, bartender, and lab technician.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of May 27, 2004. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's schizoaffective disorder severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed

**MEMORANDUM DECISION AND ORDER - 2**

impairment.  The ALJ found that Petitioner's impairments did not meet or equal the

criteria for the listed impairments, specifically Listing 12.04 regarding affective disorders.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

the claimant's residual functional capacity ("RFC") and determine at step four whether

the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner retained the RFC to perform her past relevant work as a

cashier. Therefore, the ALJ did not proceed to step five.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because

of the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see*

*also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).

An individual will be determined to be disabled only if her physical or mental

impairments are of such severity that she not only cannot do her previous work but is

unable, considering her age, education, and work experience, to engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §

423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if

the decision is supported by substantial evidence and is not the product of legal error.  42

**MEMORANDUM DECISION AND ORDER - 3**

U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's

credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner believes the ALJ erred at steps three and four. Specifically, Petitioner contends that the ALJ did not properly evaluate all of the relevant criteria of Listing 12.04. Second, Petitioner argues that the ALJ did not provide specific and legitimate reasons for rejecting the opinions of Petitioner's treating physicians and therapists, and that there was not substantial evidence in the record to support the ALJ's decision to rely upon the opinion of the state agency examining physician. Finally, Petitioner argues that the ALJ's RFC analysis did not include all of Petitioner's limitations, specifically her physical limitations caused by her knee and foot pain.

Respondent argues that the ALJ did not err, because the ALJ properly determined the evidence did not support a finding that Petitioner's impairments met the requirements for Listing 12.04, because she did not have episodes of decompensation as defined by the rule. Second, Petitioner contends that the ALJ properly gave more weight to the medical opinions of the state agency examining physician than to Petitioner's treating physician. And finally, Respondent contends that the ALJ properly considered all of Petitioner's

**MEMORANDUM DECISION AND ORDER - 5**

limitations that were supported by substantial evidence in the record when making his RFC determination and finding that Petitioner could perform her past work as a cashier.

In this case, the Court will first consider the physician testimony before it examines the allegation of error at step three, because the physician testimony directly bears upon factors inherent in determining whether Petitioner's mental health condition meets Listing 12.04.

1.      **Physician Testimony**

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991).  If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific

**MEMORANDUM DECISION AND ORDER - 6**

and legitimate reasons" supported by substantial evidence in the record for so doing.
*Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

An ALJ is not required to accept an opinion of a treating physician if it is
conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981
F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's
opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes
v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support
the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the
physician's opinion include clinical findings from examinations, conflicting medical
opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*;
*Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871
(9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Reports of treating physicians submitted relative to Petitioner's work-related
ability are persuasive evidence of a claimant's disability due to pain and her inability to
engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir.
1984). Although the ALJ is not bound by expert medical opinion on the issue of
disability, he must give clear and convincing reasons supported by substantial evidence
for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d
1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of*

**MEMORANDUM DECISION AND ORDER - 7**

*Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981)).  Clear and convincing reasons must also be given to reject a treating doctor's ultimate conclusions concerning disability, especially when they are not contradicted by another doctor.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Petitioner alleges disability beginning on May 27, 2004. (AR 61.) She had undergone a Nissen Fundoplication surgery on December 10, 2002, (AR 186), and had complications after the surgery consisting of pain, vomiting, and diarrhea. (AR 181 – 184.) An esophageal motility study performed on March 12, 2004, indicated abnormal motility, and incomplete relaxation. (AR 181.) Numerous emergency room visits appear in Petitioner's medical records as well, wherein she complained of chest pain, but in general all tests showed no abnormalities. On June 9, 2004, Petitioner's cardiologist referred her for a heart study because of her continuing complaints of chest pain absent physical evidence of any disease process. The EKG performed was remarkable for the presence of severe sinus bradycardia at 44 BPM, but was basically normal with an abnormal intravenous adenosine/technetium. (AR 214.) An emergency room note on June 11, 2004, indicated Petitioner had been to the emergency room three times in the past eight days complaining of chest pain, which pain was thought to be atypical. (AR 217, 223.) Health practitioners noted that Petitioner's complaints of chest pain were likely somatic in nature, as a result of her mental health condition. (AR 70F – 70J.)

Petitioner's first hospitalization for mental health issues occurred on June 30,

**MEMORANDUM DECISION AND ORDER - 8**

2004. She presented to the emergency room earlier that day complaining of chest pain. However, at 2:00 a.m. she was brought into the emergency room by police after she had begun acting unusually. (AR 327). Petitioner became delusional, she was talking to herself, and talking to people not present in the room. (AR 328.) The emergency room physician diagnosed her status as acute psychosis, likely from bipolar disorder, considering she was paranoid and delusional. (AR 328 – 329.) After six hours in the emergency room, physicians transferred Petitioner to the University of Utah neuropsychiatric institute, and she was committed against her will. (AR 329.) Upon admission to the psychiatric hospital, Petitioner was noted to be paranoid and she refused to answer questions, she had no awareness of her surroundings, and she demonstrated paranoid and secretive behavior. (AR 332.) Petitioner was started on a course of Lithium, and she began to show improvement. (AR 332.) It was noted that Petitioner had been fired from her job at Wal-Mart because of her psychiatric difficulties. (AR 332.) On July 22, 2004, she was discharged from the psychiatric hospital.

On November 4, 2004, Petitioner established care with Dr. Blackham, an osteopathic physician. (AR 433.) At that time, Dr. Blackham noted Petitioner was suffering from depression and a heart condition, and he documented that she had recently been discharged from the psychiatric hospital. (AR 433.) On December 2, 2004, Dr. Blackham completed a residual function and mental health function questionnaire. On the form, Dr. Blackham noted that, although Petitioner's depression was stable on

**MEMORANDUM DECISION AND ORDER - 9**

medication, in his opinion he believed Petitioner would be absent from work more than

four times per month due to her ailments. (AR 418 – 19.) In addition, Dr. Blackham

indicated Petitioner suffered from bipolar disorder, had moderate limitations in several

key functional areas, including difficulties in maintaining social functioning, maintaining

concentration, persistence or pace, and that she had experienced repeated episodes of

decompensation. In Dr. Blackham's opinion, Petitioner was suffering from a "residual

disease process that has resulted in such marginal adjustment that even a minimal increase

in mental demands or change in the environment would be predicated to cause [her] to

decompensate." (AR 428 – 429.) On January 4, 2005, Dr. Blackham competed a

workplace functional ability report, again indicating Petitioner suffered from psychiatric

issues, heart problems, and diabetes, and that Petitioner was "presently unable to work."

(AR 414 – 415.)

Petitioner experienced a second episode of psychotic behavior on May 2, 2006. On

that date, she was taken to the emergency room by police, where she exhibited bizarre

behavior including hallucinations. (AR 70R – 70V.) Petitioner was transferred to the Utah

psychiatric hospital and was involuntarily committed for inpatient psychiatric care. (AR

70R – 70V.) The records from her admission do not appear complete, but an emergency

room note on July 31, 2006, indicates Petitioner was discharged from the psychiatric

hospital on June 28, 2006. (AR 70K.) Treatment records from 2007 indicate Petitioner

remained on committed status so that she could continue to receive intensive therapy

**MEMORANDUM DECISION AND ORDER - 10**

services, and medication management. (AR 495.) Throughout 2007, treatment notes indicate that, although Petitioner reported positive improvement in her symptoms, she met several times a week for either group or individual therapy. (AR 70K, 70P, 493 – 505.) On March 30, 2007, Petitioner's medications were adjusted after she reported having difficulty with her mother that translated into paranoia and auditory hallucinations. (AR 502.)

On May 8, 2007, Petitioner's counselors, Chad Williams, CPCI, and Raun Child, PA-C, were of the opinion that, without continued therapy, Petitioner becomes "quickly overcome by her symptoms which leaves her unable to function in the community." (AR 485.) On May 25, 2007, Williams reported that Petitioner was feeling "okay," but still required support and therefore she would remain on committed status. (AR 494.)

In April of 2007, it was noted that Petitioner was working as a bartender during the evenings, but Petitioner's earnings record does not indicate any income for 2007. (AR 103.) In 2006, she also had worked as a bartender, but the ALJ determined her earnings of $2,081.00 for 2006 did not constitute substantial gainful activity. (AR 63, 534.)

Also in the record is a psychological evaluation conducted by Jonathan Ririe, Ph.D., on June 27, 2005. Dr. Ririe met with Petitioner, and opined Petitioner did not appear to be suffering from a psychotic disorder at all. (AR 361.) Dr. Ririe based his opinion entirely on Petitioner's reports. (AR 357 – 358.)  During the interview, Petitioner described her 2004 hospitalization, indicating she was there "for an evaluation," and she

**MEMORANDUM DECISION AND ORDER - 11**

was diagnosed as bipolar "just from the information they got from people. Like information from my ex-husband." (AR 358.) During the interview, Petitioner "denied experiencing hallucinations and delusions." (AR 358.) When asked about symptoms of anxiety, Petitioner indicated she had anxiety attacks "maybe four times since [she] got out of the hospital" and that the anxiety does not interfere with her functioning. (AR 359.) In Dr. Ririe's opinion, Petitioner's mental status had improved markedly after her discharge from her hospitalization in 2004, because she had distanced herself from family members and her diagnosis of bipolar disorder was based upon information from others. Therefore, Dr. Ririe believed she was suffering from depressive disorder, not bipolar disorder, and that her mental health condition was in remission. (AR 361.)

Based upon Dr. Ririe's report, the ALJ determined that the mental health and psychological evidence documented that Petitioner was doing well on her prescribed medications, and "there was no evidence presented that indicated the claimant could not work due to either physical and/or mental impairments." (AR 67.) The ALJ rejected the opinions of counselors[1] Williams and Child, and gave "little weight" to treating physician Dr. Blackham's opinion of December 2, 2004, because the statements "were not consistent with the findings of Dr. Ririe." (AR 357.) The ALJ found the state agency medical consultants' opinions regarding Petitioner's physical and mental condition persuasive, because their findings were "consistent with the finding and opinion of Dr.

---

[1] Counselors and therapists, while not considered acceptable medical sources, are considered as other sources. *Gomez v. Chater*, 74 F.3d 967, 970 – 971 (9th Cir. 1996).

MEMORANDUM DECISION AND ORDER - 12

Ririe." No other explanation was given for rejecting Dr. Blackham's opinions or the supporting opinions of Petitioner's therapists.

The ALJ committed error. Considering Dr. Ririe's opinions conflicted with Dr. Blackham's opinions, the ALJ could reject Dr. Blackham's opinions by providing specific and legitimate reasons supported by substantial evidence in the record. The ALJ's only proffered reason for rejecting Dr. Blackham's opinion, and that of Petitioner's other care providers which lent support to Dr. Blackham's opinion, was because the opinion conflicted with Dr. Ririe's opinion. The ALJ did not identify any other reason, specific, legitimate, or otherwise, for the Court's review.

The weight of the evidence provides little support for the ALJ's rejection of Dr. Blackham's opinion, which in turn is buttressed by treating therapists' opinions, that Petitioner could not work due to her mental impairments.[2] It is glaringly obvious that Dr. Ririe did not examine Petitioner's medical records. Petitioner described why she was committed in 2004, stating it was for an "evaluation," and that she was diagnosed as bipolar based upon reports from others, including her ex-husband. However, the emergency room report prior to her admission to the psychiatric hospital indicated police brought her into the emergency room and several observers in the hospital noted she was delusional, paranoid, and abusive. (AR 323 – 327.) During her stay at the University of

---

[2] Had Dr. Blackham's opinion been credited, according to the vocational expert, Petitioner would have been precluded from all work due to the number of moderate limitations in mental functioning and the predictable excessive monthly absences from work. (AR 547.)

**MEMORANDUM DECISION AND ORDER - 13**

Utah Neuropsychiatric Institute, the discharge summary indicated a course entirely

different than that described— Petitioner was admitted for acute psychosis, her treatment

course indicated that her initial treatment did not overcome observations of poor insight

and judgment, and she exhibited paranoia. (AR 332.)

Nor did Dr. Ririe note in his evaluation the numerous emergency room visits by

Petitioner throughout 2004, 2005, and later in 2006, sometimes twice in one day, for

complaints of chest pain with no etiological cause other than one EKG on June 16, 2004,

which noted sinus Bradycardia. (AR 312.) Physicians long suspected a somatic

component to Petitioner's chest pain as a result of her mental health disorder. (AR 70F –

70J.)[3] Dr. Ririe also did not have the benefit of Petitioner's hospitalization records and

mental health treatment records from and after May 2, 2006, when Petitioner was

committed again for hallucinatory and psychotic behavior because she had stopped taking

her medications. (AR 70R – 70V.) Medication management, including assistance with

setting up her medications so that she would take them correctly (*see* AR 505), was an

important part of Petitioner's treatment after her discharge on June 28, 2006. (*See* AR

501, noting that with medication, Petitioner denied visual or auditory hallucinations and

paranoia, but noted fatigue.)[4] Petitioner remained on committed status so that she would

---

[3] At the hearing, Petitioner testified she had been told by her physicians that her heart problems were related to anxiety. (AR 541.) Petitioner testified that she seeks medical attention at the hospital twice a month for anxiety related heart palpitations. (AR 541.)

[4] There is other evidence in the record that Petitioner had difficulty managing her medications, as she had called her physician's office on June 14 and 15, 2004, because she had

**MEMORANDUM DECISION AND ORDER - 14**

continue to receive intensive therapeutic care several times each week.[5]

The ALJ failed to articulate why Dr. Ririe's opinions from June of 2005, which were largely based upon Petitioner's own reports rather than the observations of her care providers throughout 2004, 2005, and 2006, were more reliable than her treating physician's opinion, those of her counselors, and those of the emergency room physicians who ordered involuntary inpatient admission to a psychiatric hospital. The Court therefore finds that the ALJ committed error by failing to provide specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Blackham's opinions.

**2.      Meet or Equal a Listing**

The ALJ found that Petitioner's impairments did not meet or equal Listing 12.04. Petitioner argues that the ALJ erred because he did not address either the A or C criteria, and improperly relied upon Dr. Ririe's opinion in addressing the B criteria. The Court agrees.

If the claimant satisfies the criteria under a listing <u>and</u> meets the twelve month duration requirement, the Commissioner must find the claimant disabled without considering age, education and work experience.  20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant bears the burden of producing medical evidence that establishes all of the requisite medical findings that her impairments meet or equal any particular listing.

mixed up her pills and could not remember what she had taken. (AR 230.)

[5] Petitioner informed the ALJ that she had been hospitalized for depression and anxiety three times, and was still under commitment. (AR 543.)

*Bowen v. Yuckert,* 482 U.S 137, 146, n. 5 (1987). Further, if the claimant is alleging equivalency to a listing, the claimant must proffer a theory, plausible or other, as to how her combined impairments equal a listing. *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001).

Listing 12.00 encompasses a broad array of mental disorders.[6] In the description of how "severity" is measured, the appendix lists several functional limitations in areas of daily activities as a guide for determining the severity of symptoms. Listing 12.00C. These include activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. The Listing gives descriptions and definitions for each of the broad categories. However, each individual disorder has certain criteria.

Listing 12.04, at issue here, covers affective disorders "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." To meet the required level of "severity," the requirements in both A and B, or A and C, must be satisfied. Paragraph C criteria are assessed only if there is a finding that the paragraph B criteria are not satisfied. 20 C.F.R. § § 404, Subpt. P, App. 1, § 12.00(A), Mental Disorders.

The A and B criteria are defined as follows:

A. Medically documented persistence, either continuous or intermittent, of one of the following:

---

[6] Listed impairments are found at 20 C.F.R. § 404, Subpt. P, App. 1.

**MEMORANDUM DECISION AND ORDER - 16**

1. Depressive syndrome characterized by at least four of the following:

    a. Anhedonia or pervasive loss of interest in almost all activities; or

    b. Appetite disturbance with change in weight; or

    c. Sleep disturbance; or

    d. Psychomotor agitation or retardation; or

    e. Decreased energy; or

    f. Feelings of guilt or worthlessness; or

    g. Difficulty concentrating or thinking; or

    h. Thoughts of suicide; or

    I. Hallucinations, delusions, or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

    a. Hyperactivity; or

    b. Pressure of speech; or

    c. Flight of ideas; or

    d. Inflated self-esteem; or

    e. Decreased need for sleep; or

    f. Easy distractibility; or

    g. Involvement in activities that have a high probability of painful consequences which are

    h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

If the paragraph B criteria are not satisfied, the paragraph C criteria allows for a

claimant to meet the listing if there is a:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment

**MEMORANDUM DECISION AND ORDER - 17**

that even a minimal increase in mental demands or change in the
environment would be predicted to cause the individual to decompensate; or
3. Current history of 1 or more years' inability to function outside a highly
supportive living arrangement, with an indication of continued need for
such an arrangement.

*See Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) ("The required level of severity

for diagnosis 12.04 is met when the claimant's impairment meets at least *one* paragraph A

criterion *and* at least *two* paragraph B criteria."); 20 C.F.R. § 404, Subpt. P, App. 1,

12.00(A) ("We will assess the paragraph B criteria before we apply the paragraph C

criteria. We will assess the paragraph C criteria only if we find that the paragraph B

criteria are not satisfied.").

As discussed above, the ALJ did not give any reason, let alone a specific,

legitimate reason based upon substantial evidence, for disregarding the diagnosis of

bipolar or schizoaffective disorder, depressed type, as well as acute periods of psychosis,

that Dr. Blackham and others who treated Petitioner in the emergency room and the

University of Utah hospital believed Petitioner suffered from. The ALJ failed to address

the paragraph A criteria in his analysis at all, and instead considered only the paragraph B

criteria. (AR 65 ("the undersigned has considered the four broad functional areas . . .

known as the 'paragraph B' criteria.")). According to Dr. Blackham, Petitioner met the

paragraph A criteria, as he indicated Petitioner suffered from seven of the criteria in

12.04(A)(1), five of the criteria in 12.04(A)(2), and met the criteria for 12.04(A)(3). (AR

428). *See Holohan v. Massanari*, 246 F.3d 1195, 1203 (9th Cir. 2001) (a diagnosis of

**MEMORANDUM DECISION AND ORDER - 18**

mental impairment satisfies the paragraph A criteria).[7]

As for the paragraph B criteria, the ALJ erred. The ALJ largely relied upon the progress notes from Petitioner's hospitalization and continued treatment in 2006 and 2007, and Dr. Ririe's evaluation, to support his findings that Petitioner had mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. However, specific and probative evidence in the record for the Court's review undermines the ALJ's findings.

In general, Petitioner reported improvement to her care providers. However, those same care providers, Williams and Child, were of the opinion that, without continued supervision, Petitioner would be unable to function. (AR 485). Petitioner remained on committed status. And Dr. Blackham completed several functional reports, the first on December 2, 2004, indicating Petitioner would miss work excessively and was unable to work due to mental impairments (AR 418); the second listing moderate to marked restrictions in the functional categories of paragraph B (AR 425); another on January 4, 2005, indicating Petitioner was unable to work (AR 414); and a final report on April 18, 2005, again determining Petitioner was unable to work (AR 406 – 408). In Dr. Blackham's opinion, Petitioner suffered from marked restrictions of activities of daily

---

[7] Respondent argues that the ALJ's failure to discuss the paragraph A criteria was harmless, because the ALJ implicitly acknowledged that Petitioner was diagnosed with schizoaffective disorder. (Respondent's Brief at 10, Dkt. 17.) However, the ALJ does not explain the inconsistency in his reliance upon that diagnosis, on the one hand, which was noted by Child (AR 493), and Dr. Ririe's opinion that Petitioner was not suffering from any psychotic disorder, but rather depressive disorder that was in partial remission (AR 361).

living, and moderate episodes of decompensation of extended duration, meaning three episodes within one year lasting for at least two weeks.

Crediting the testimony of Petitioner's treating physician and her other care providers would have led to a determination that Petitioner met the paragraph B criteria and the requirements of the listing. Yet, the ALJ, while summarizing the evidence, failed to discuss all of the probative evidence relevant to Petitioner's mental impairment; how he resolved the conflicts in this evidence; or how he resolved the conflicts between his findings and the evidence presented by Petitioner's care providers. The ALJ is required to evaluate "all relevant evidence to obtain a longitudinal picture" of the Petitioner's overall degree of functional limitations. It is clear he did not do so, instead relying solely upon Petitioner's self reports to her treatment providers after her 2006 hospitalization and Dr. Ririe's evaluation prior to the 2006 hospitalization.

The 2006 and 2007 treatment notes indicate that, without careful medication management and intensive therapy, Petitioner would not be expected to function. (*see* AR 70R – 70V, 70P, 485, 501, 502, 495, 494.) There were instances in the record indicating that, without supervision, Petitioner failed to take her medication (AR 70R – 70V), and required assistance with it (AR 70P). The ALJ failed also to assess Petitioner's anxiety, and resulting use of the emergency room on a frequent basis, as a component of her mental disorder.

Finally, the ALJ stated that Petitioner "has experienced no episodes of

**MEMORANDUM DECISION AND ORDER - 20**

decompensation." (AR 65.) But the ALJ, as discussed, failed to address Dr. Blackham's opinion that Petitioner experienced at least three episodes of decompensation. Nor did the ALJ address Petitioner's hospitalization in 2006. Respondent attempts to salvage the ALJ's conclusion by arguing that the record did not indicate how long Petitioner was hospitalized, and that emergency room visits after her hospitalization were for matters unrelated to her mental impairment. (Respondent's Brief at 9, Dkt. 17.)

However, the record does indicate that Petitioner was hospitalized on May 2, 2006, and discharged June 28, 2006, (AR 70R – 70V, 70K), a hospitalization that lasted almost two months. Petitioner remained on committed status thereafter. An incident such as hospitalization that "signals the need for a more structured psychological support system would qualify as an episode of decompensation," as would other scenarios such as medical records showing a significant alteration in medication. *Larson v. Astrue*, 615 F.3d 744, 750 (7th Cir. 2010). As for her emergency room visits, while they are for chest pain, physicians have noted that the etiology of the pain is unclear and they suspect it is somatic in nature — in other words, it is related to her mental impairment. (AR 70F – 70J; 541.) And finally, the ALJ failed to address the symptoms related to Petitioner's medications and her need to have them adjusted periodically. (AR 70P.)

Even if there was no error with respect to the ALJ's assessment of the paragraph B criteria, the ALJ failed to address the paragraph C criteria. Petitioner may meet either the A and B, or the A and C, criteria. *Holohan*, 246 F.3d at 1203. In this case, if the ALJ was

**MEMORANDUM DECISION AND ORDER - 21**

of the opinion that Petitioner did not meet the paragraph B criteria, the ALJ failed to explain why Petitioner's documented history since her first hospitalization in 2004 for paranoid, manic, and delusional behavior, which required a second hospitalization in 2006, and continued psychiatric care thereafter, does not meet the documented two year durational requirement under paragraph C. Moreover, Petitioner testified she was fired from her last job at Wal-Mart because of her 2004 hospitalization. (AR 333, 360.) Treating physician Dr. Blackham opined that Petitioner suffered from a residual disease process, and changes in demands or her environment would cause Petitioner to decompensate. (AR 425 -- 428.) Treating therapists Williams and Childs agreed, and Petitioner remained on committed status to receive continued therapy and medication management. At the time of the hearing before the ALJ, Petitioner had been on committed status since her discharge on June 28, 2006. The ALJ's complete failure to address these facts relative to the paragraph C criteria was error.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ committed error at step three and four in the five step analysis. The ALJ failed to set forth specific and legitimate reasons for rejecting the opinions of Petitioner's treating physician, and those of other witnesses, which included her therapists and the numerous emergency room physicians who witnessed Petitioner's psychotic behavior and anxiety attacks. In the absence of specific reasons for disbelieving the treating physician, the ALJ's decision is not

**MEMORANDUM DECISION AND ORDER - 22**

supported by substantial evidence. Dr. Ririe's opinion, upon which the ALJ relied, was not based upon a review of the entire record, including the record of Petitioner's 2004 and 2006 hospitalizations.

Had Dr. Blackham's opinion been credited, the vocational expert was of the opinion that Petitioner would be precluded from all work. (AR 547.) Moreover, had the opinion been credited, it is more than likely Petitioner would have been found to have met Listing 12.04.

A remand is therefore appropriate so that specific findings regarding the treating physician's medical opinions can be developed, as well as consideration of the evidence as a whole regarding whether Petitioner meets Listing 12.04.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)   Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)   This action shall be **REMANDED** to the Commissioner for further

proceedings consistent with this opinion.

3)   This Remand shall be considered a "sentence four remand," consistent with

42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir.

2002).



DATED: September 26, 2011

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 24**